MORRIS FRIEDMAN *v.* UNITED STATES (No. 4940)[1]

United States Court of Customs and Patent Appeals, May 23, 1958

*Allerton deC. Tompkins* for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Alfred A. Taylor, Jr.* and *Richard H. Welsh*, trial attorneys, of counsel), for the United States.

[Oral argument April 8, 1958, by Mr. Tompkins and Mr. Welsh]

Before JOHNSON, Chief Judge, and WORLEY, and RICH, Associate Judges

JOHNSON, Chief Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, entered pursuant to its decision (C. D. 1907), overruling a protest against the collector's classification and duty assessment of merchandise invoiced as "Timetable Movements for Lock."

The collector classified the merchandise under the provision in paragraph 368 (a) of the Tariff Act of 1930 for a mechanism or device intended or suitable for recording, indicating or performing any operation or function at a predetermined time or times. Since each item involved is valued at more than $10 and contains 11 jewels, duty was imposed under subsections (1), (2), and (3) of paragraph 368 (a). The importer, appellant herein, protested, urging that the merchandise is properly dutiable under the provisions of paragraph 367 (a) of said Act, as modified by the trade agreement with Switzerland, T. D. 48093, as time-keeping or time-measuring devices measuring less than

[1] C. A. D. 680.

1.77 inches in width at the shortest surface dimension through the center of the pillar or bottom plate. It was urged that the specific characteristics of the merchandise (hereinafter to be set forth) subjected it to the provisions of subsections (1), (3), and (5) of paragraph 367 (a). The Customs Court overruled the importer's protest and from this ruling the importer appeals.

The involved paragraphs read as follows, insofar as pertinent:

Par. 367 (a). Watch movements, *and time-keeping, time-measuring, or time-indicating mechanisms*, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

(1) * * *; if more than one and two-tenths inches but not more than one and one-half inches wide, $1.40 each; * * *

(3) any of the foregoing having more than seven jewels shall be subject to additional duty of 15 cents for each jewel in excess of seven;

(4) any of the foregoing shall be subject to an additional duty of $1.00 for each adjustment of whatever kind (treating adjustment to temperature as two adjustments) in accordance with the marking as hereinafter provided;

(5) any of the foregoing shall be subject to an additional duty of $1.00 each, if constructed or designed to operate for a period in excess of forty-seven hours without rewinding, * * *. (Emphasis added.)

Par. 368 (a). Clocks, clock movements, including lever movements, clockwork mechanisms, *time-keeping, time-measuring, or time-indicating mechanisms, devices and instruments*, synchronous and subsynchronous motors of less than one-fortieth of one horsepower valued at not more than $3 each, not including the value of gears or other attachments *and any mechanism, device, or instrument intended or suitable* for measuring time, distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, or for recording or indicating time, or *for recording, indicating, or performing any operation or function at a predetermined time or times*, all the above (*except the articles enumerated or described in paragraph 367*), whether or not in cases, containers, or housings:

(1) * * * valued at more than $10 each, $4.50 each;

(2) Any of the foregoing shall be subject to an additional duty of 65 per centum ad valorem;

(3) Any of the foregoing containing jewels shall be subject to an additional cumulative duty of 25 cents for each such jewel. (Emphasis added.)

It was stipulated between the parties:

(1) That the device or mechanism under protest when measured at the shortest surface dimension through the center of the top and/or bottom plate is 1.47 inches in width.

(2) That said device or mechanism contains 11 jewels as defined in paragraph 367 (i); that it is marked "unadjusted"; and that it is constructed to operate for a period in excess of 47 hours without rewinding when fully wound.

(3) That said device or mechanism is represented by and is identical with the sample that [was offered] into evidence as Exhibit 1, although it is conceded not to be out of this particular shipment under protest.

The imported merchandise, as evidenced by Exhibit 1, consists essentially of a mechanism which the layman might recognize as a watch or clock movement. Unlike the common clock or watch,

however, the imported device is not equipped with a 12-hour graduated dial or minute and hour hands. Rather, it is equipped with a rotatable dial, the face of which is marked with numbers from 0 to 120 and which has a pointer projecting over the edge of the dial. Also on the face of the dial is a tiny metal projection, or pin, located midway between the center and edge of the dial. A square arbor, associated with a gear in the gear train of the movement is suitably located on the device for winding of the movement.

The record indicates that the above device is ordinarily used in connection with a time lock (such as Exhibit 3) on the door of a bank vault or safe. The operation of the instant device and the time lock is described in appellee's brief as follows:

* * * Exhibit 3, which represents a time lock mechanism, contains three devices like exhibit 1. When each is in a fully rundown condition, the lock would be considered open. To make use of the time lock, the operator inserts a key having a square hole which fits over a square winding arbor on exhibit 1. By means of this key, each movement is wound for the desired length of time the safe is to be locked. For instance, if it should be desired to have the safe closed for a period of 16 hours, each movement would be wound until the 16-hour graduation coincides with a small pointer on the movement. Each movement will then run until the opening point is reached, which is marked by the figure "0" on the dial.

Exhibit 4, which is referred to as a "tongue piece assembly," is attached to the moving parts of a vault door or safe door, to which exhibit 3 is also attached. When exhibit 3, the time lock mechanism, is in the open position, exhibit 4 will enter the opening in exhibit 3 to the full extent.

Any one of the three devices in exhibit 3, each one of which is like exhibit 1, will function independently from any of the others. It was explained that the reason exhibit 3 contains three devices such as exhibit 1 is that it has always been the policy of time lock manufacturers not to use a single timing device. For security and safety, if one timing device fails to function, there are two others still left to operate, and if perchance two of the timing devices should fail, the remaining one will carry on and execute its purpose.

When the timing devices have run their allotted period, a steel pin attached to the dial on exhibit 1 contacts a lug which is found on the underside of the bar partially covering the dial of the three devices in exhibit 3. Eight hours before a time lock is considered open, the steel pin on the dial of exhibit 1 contacts the lug on the underside of this bar on exhibit 3 and starts to move it in a slow manner to the opening point, exactly 8 hours being required to move the bar so that the time lock may reach the open position.

As aforesaid, it appears that the imported devices are ordinarily used in connection with time locks. One witness for the importer, in fact, testified that their general application and use, brushing aside all exceptional and unusual or possible uses, has been in connection with such locks. Another witness for the importer, however, testified that the instant devices are also used in connection with burglar alarm systems. When used in such an environment, the timer serves as an electrical contact and keeps the burglar alarm in a "set" position throughout the period set on the dial of the timer. When that time runs out, the electrical contact is broken and the alarm circuit is

broken. The latter witness also testified to an alleged third use of the instant device, but the modifications necessitated for such use are so great that we may disregard this use for purposes of this case.

It seems obvious from the foregoing that, even if it were argued that the instant timers were not dedicated to use in connection with time locks, they are dedicated to use, broadly speaking, as devices intended for performing an operation or function at a predetermined time or times. And this is true whether the function urged is locking a safe or maintaining a burglar alarm in a "set" position. As such, there is no question but that the timers are covered by the provision in paragraph 368 (a) for "any mechanism, device, or instrument intended or suitable * * * for recording, indicating, or performing any operation or function at a predetermined time or times."

The importer argues, however, that each of the provisions of paragraph 368 (a) is qualified by the phrase "except the articles enumerated or described in paragraph 367"; that the instant merchandise is described in paragraph 367 (a) as "time-keeping" or "time-measuring" devices; and that, therefore, the merchandise is dutiable under the provisions of the latter paragraph.

The court below, on the other hand, was of the opinion that since both paragraphs 367 (a) and 368 (a) contain a provision for "time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments" that Congress must have meant to include something different when it additionally provided, in paragraph 368 (a), for devices intended or suitable for performing any operation or function at a predetermined time or times; that while each of the instant devices, in a sense, measures a period of time, this is a "mere incident to the function for which it was designed and to which it was dedicated, namely, to maintain a safe in a locked position during a predetermined time." It accordingly overruled the importer's protest.

We are of the opinion that the decision of the court below was correct and that its judgment must be affirmed.

At the outset, we agree with the importer that the exception in paragraph 368 qualifies all the provisions preceding it and that only those devices "intended or suitable * * * for recording, indicating, or performing any operation or function at a predetermined time or times" which are not "enumerated or described in paragraph 367" are included thereunder. This, however, is the extent of our agreement with the importer. The mere fact that the instant devices "measure" time in the sense that they are designed to perform a certain operation only after the passage of a predetermined amount of time does not mean that they are "time-measuring" or "time-keeping" instruments in a tariff sense. We cannot conceive of a device, "intended or suitable * * * for recording, indicating, or

performing any operation or function at a predetermined time or times" which does not "measure" or "keep" time in the sense urged by the importer. Were we to give the words "time-measuring" and "time-keeping" the meaning pressed upon us by the importer, we would have to impute an idle task to Congress in including the "predetermined time (etc.)" provision in paragraph 368, for the provision for "time-keeping, time-measuring, or time-indicating" devices in paragraph 368 would then be sufficient to include any such device not dutiable under paragraph 367.

It seems clear, therefore, that Congress must have intended the "predetermined time (etc)" provision of paragraph 368 to embrace something different from that included in the provision for "time-keeping, time-measuring, or time-indicating" devices, while recognizing that the two provisions could, in certain cases, equally cover a given device (as evidenced by the exception to paragraph 368). The involved provisions must be interpreted with this in mind.

Consistent with this analysis, we are of the opinion that the minimum requirement for a time-keeping, measuring or indicating device is that it shall be capable, in normal use, of showing how much time has passed since or remains before some particular time or event.

There are various ways in which a single device may serve to keep, measure or indicate time and to perform some function at a predetermined time. Time-keeping, measuring or indicating may be the primary function of such a device, as in alarm clocks, or it may have varying lesser degrees of importance, as in clock-thermostats and devices such as electric oven timers which serve primarily to do something after a predetermined time, but which also include a dial and a pointer to show how much of that time has passed or remains. It would seem that all the instruments above referred to could properly be considered to be time-keeping, measuring or indicating devices, since they are definitely designed to mark the passage of time and have at least one part which performs no other function.

Another group of devices, including, for example, some electric toasters, are designed essentially for doing something at a set time, but have a movable part which is visible and by means of which it is possible to judge approximately how much time has passed. Whether such instruments are time-measuring devices is a closer question, which need not be decided here.

Finally, there are devices which perform a function at a predetermined time, but in which the operating parts are concealed so that the device would not normally convey any information as to the passage of time. The instant devices are of that character since, as testified by one of appellant's witnesses, "you would have to be locked in the vault once it was closed to see if it [the device] was wound up." While the record does not show how such a device would be placed when

used in a burglar alarm system, it seems evident that it would operate principally, if not solely, at times when the building to be protected was unoccupied, and could thus serve no time-keeping, measuring or indicating function in the sense in which we believe those words were used by Congress.

We do not consider instruments of the type last mentioned to be time-keeping, measuring or indicating devices within the meaning of the paragraphs here under consideration. As heretofore indicated, those paragraphs definitely contemplate that there must be at least some devices for performing an operation or function at a predetermined time which are not also time-keeping, measuring or indicating devices. Were we to hold that the instant devices are time-keeping or measuring devices within the contemplation of the Tariff Act, merely because they contain means responsive to the passage of time, we would have to disagree with the above conclusion, for if the instant devices are "time-keeping" or "time-measuring" devices, we can conceive of no devices which are designed for performing a certain function at a predetermined time which are not.

For the foregoing reasons, the judgment of the Customs Court is *affirmed*.

WORLEY, J., concurs in result.